ISABELLA J. DAVIDSON ET AL. v. M. M. FELDER ET AL.

No. 40.

**1. Agreement of Counsel.**—Counsel having agreed that either party might offer any paper in evidence pertaining to the land in controversy, without filing same, and without giving notice that the paper would be offered. such paper to be subject to any legal objections from the opposite party; and plaintiffs claiming the land as heirs of Charles Gates, defendants were properly allowed to read, without filing or notice, an article of agreement, proven for record by one of the subscribing witnesses, and signed by Charles Gates, by which he agreed to convey to his brother Amos (under whom defendants claim) the land in controversy.

**2. Affidavit of Forgery — Burden of Proof.**—A paper offered in evidence under above agreement being met by a plea of non est factum, was nevertheless admissible; the burden of proof was upon the party asserting the forgery to prove it, and it was not shifted to the opposite party by the plea.

**3. Case in Judgment — Evidence Showing Good Title.**—Plaintiffs claimed as heirs of their father, Charles Gates. his undivided interest in lands granted to his father, William, and proved their heirship and coverture. Defendants deraigned their title under Amos Gates, a brother of Charles. They showed an article of agreement signed by Charles, and proven by a subscribing witness, by which he agreed to convey to Amos his interest in the estate of his father and the land in controversy. in consideration of $200 received. They also showed a decree of the alcalde of San Felipe de Austin. of February 17, 1834, divesting the title of the other heirs of William Gates, and vesting it in Amos. They proved that Amos was in possession of the land several years before the death of his father; that Charles lived on the land until he left the county in 1832; that he died in 1840, and his widow and children returned in 1846 and lived on the land in a house belonging to Amos until 1850 or 1853. when they left; that Amos bought the interests of his other brothers and sisters, and claimed and exercised acts of ownership over the land until he sold, in 1857; and that Charles had been heard repeatedly to say that he had sold his interest in his father's estate to Amos.    Under these facts, and as during the lifetime of Charles a parol sale of land was valid, the judgment in favor of defendants is affirmed.

APPEAL from Washington.   Tried below before Hon. C. C. GARRETT.

*Croft & Croft* and *Searcey & Garrett*, for appellants.—1.   An instrument of writing so vague and indefinite on its face as not to show what is meant by it, whether it be a deed or power of attorney, and which fails to describe the land pretended to be conveyed by it, and which fails to show whose estate is meant to be conveyed by it, and which requires evidence aliunde to identify the land and its location, is absolutely void. Norris v. Hunt, 51 Texas, 610;  Wright v. Lancaster, 48 Texas, 250;  Jones v. Carver, 59 Texas, 294.

2.   The court erred in construing said instrument of writing to be a deed:

(1)  Because it showed upon its face that it was an agreement to have Samuel Gates make the deed to Amos Gates according to law, and authorized Samuel Gates to sign his (Charles') name to the deed.

(2)  Because it was an agreement to put the contract of sale in writing, and to do it according to law, and the law of Texas at that time required a contract for the sale of land to be made before a notary public, or some one with the functions of a notary.

(3)  Because the agreement contained a condition precedent, which by its very terms had to be performed before Charles Gates' title passed.

(4)  Because the power of attorney made by Charles Gates in 1833, appointing Samuel M. Williamson, of the town of Austin, his attorney in fact, to represent his interest in and to his father's estate, and to transfer it to Amos Gates, shows that they did not consider said first instrument, dated March 6, 1829, a deed, and that they both, Amos and Charles Gates, recognized that Charles Gates still had at that date, 1833, an interest in and to his deceased father's estate.   Blum v. Looney, 69 Texas,. 5;  Schmidt's Laws of Spain, 95,. 99;  1 Sayles' Early Laws of Texas, arts. 125 (secs. 2, 4, 8), 126 (secs. 2, 10, 11, 21, 22).

3.   The appointment of a general agent revokes a special agency.   Rapier v. Ins. Co., 57 Ala., 101.   Revocation may be implied.   Principal may revoke at any time.   1 Am. and Eng. Encyc. of Law, 444, and authorities cited.

*C. R. Breedlove* and *L. Kirk*, for appellees.—1.   The paper offered in evidence by appellees was a deed: (1) grantor Charles Gates; (2) grantee Amos Gates; (3) consideration $200 cash, paid by Amos Gates to Charles Gates; (4) conveying one-half league of land, describing it, and also all of the grantor Charles Gates' interest in William Gates' estate; (5) it is signed by the grantor; (6) it was delivered to the grantee; (7) it was witnessed by two persons; (8) one of these persons proved the deed up for record; (9) and it was duly recorded in the county where the land lies; (10) it was more than sixty years old when offered in evidence, and had been duly recorded for about forty-five years when offered in evi-

dence. It was therefore rightfully admitted in evidence, and its legal effect was a matter for the court. Bass v. Sevier, 58 Texas, 567; Holmes v. Coryell, 58 Texas, 680; Cox v. Cock, 59 Texas, 521; Glasscock v. Hughes, 55 Texas, 461; Williams v. Conger, 49 Texas, 582; Gainer v. Cotton, 49 Texas, 101; Mapes v. Leal's Heirs, 27 Texas, 345; McCown v. Wheeler, 20 Texas, 372; Holman v. Criswell, 13 Texas, 38; Fiske v. Miller, 13 Texas, 225; Burleson v. Burleson, 11 Texas, 1; Clay v. Clay's Heirs, 35 Texas, 510; Gardner v. Stell, 34 Texas, 561

2. The judgment offered in evidence was a judgment of a court of general jurisdiction, and is admissible in any other court, all presumption being in its favor. Tennell v. Breedlove, 54 Texas, 540; Crane v. Blum, 56 Texas, 325; Fitch v. Boyer, 51 Texas, 337.

PLEASANTS, ASSOCIATE JUSTICE.—This suit was instituted in the District Court of Washington County, by the appellants, on the 12th of August, A. D. 1889, to recover from the possession of appellees one-third of the lands described in the petition, and for the rents and profits of same; the petitioners averring that they were and had been for some years illegally and wrongfully deprived of the use and occupation of their lands by defendants. The land sued for was the inheritable share of their deceased father, Charles Gates, of two leagues of land, granted his father, William Gates, as a colonist.

The petitioners alleged, that their grandfather, William Gates, died, leaving surviving him their father, Charles Gates, and two other children as his only heirs, and that petitioners were the only heirs of their deceased father.

Defendants answered by demurrers, plea of not guilty, and pleas of statutes of limitations; and plaintiffs by supplemental petition averred the coverture of each of them from 1856 to the institution of their suit.

It was agreed that both plaintiffs and defendants claimed from William Gates, deceased, as a common source of title.

The plaintiffs proved that they were the heirs of their deceased father, Charles Gates, and that he was one of the children and heirs of William Gates, the grantee of the lands in controversy; that the lands of his estate had never been partitioned among his heirs, and that neither their father, Charles Gates, nor themselves had received any portion of the estate of William Gates; and they proved also that they were married to their present husbands in 1856. And it was further proved by plaintiffs, that neither themselves nor their mother had ever heard of any sale by their father of his interest in his father's estate.

The defendants, in bar of plaintiffs' right to recover, offered evidence to show that their father sold his interest in his father's estate to his brother, Amos Gates, under whom the defendants deraign their titles. The grantee, William Gates, died in 1828, and defendants offered in evi-

dence an agreement between counsel, by which either plaintiffs or defendants might offer in evidence any paper pertaining to the lands in controversy, without filing same or without giving notice that the paper would be offered; such paper, however, to be subject to any legal objection from the opposite party. Under this agreement the plaintiffs proposed to read in evidence what purported to be an instrument executed by plaintiffs' father, and dated the 22d day of March, 1829, and which is in the following words:

"*Article of agreement:* Indented, made, concluded, and fully agreed upon this 6th day of March, in the year of our Lord one thousand eight hundred and twenty-nine, between Charles Gates of one part and Amos Gates of the other: Whereas, the said Amos Gates has paid unto the said Charles Gates two hundred dollars lawful money of the Mexican nation; now, therefore, and in consideration of the said sum of two hundred dollars paid, the said Charles Gates, for himself, his heirs, executors, and administrators, doth by these presents covenant, promise, and agree to and with the said Amos Gates, or his assigns, to release, convey, confirm, and assure to the said Amos Gates and to his heirs forever, or to him he shall appoint or direct, all that tract and parcel of land containing one-half league on the west side of the Brazos, drawn from government, and deeded to my father, together with all my intruse of the desests estate; and I do likewise appoint Samuel Gates, my oldest brother, to sign my name to the deed of transfer when the said Amos Gates shall think proper to have it done according to law.

" In witness whereof, I set my hand and seal this day above riten, in the presents of the subscribed witnesses.

[Signed]                                    Charles Gates [Seal].

" Witness:
" Eldridge Hopkins,
" Adam Lawrence."

And upon which instrument was the following certificate from the clerk of the County Court of Burleson County:

" *State of Texas, County of Burleson.*—Personally appeared before me, Jeremiah A. Hood, clerk of the County Court in and for the county and State aforesaid, Adam Lawrence, who, after being duly sworn, says that he saw Charles Gates sign the annexed instrument of writing for the purpose therein expressed, and that he signed the same as a witness.

" Given under my hand and private seal, there being no seal of office, this 24th November, 1846.

[Signed]                                    "Jeremiah A. Hood,
                                             " Clerk C. C. Bl."

And which paper was filed, as appeared by endorsement of the clerk of

the County Court of Washington County, for record in that county on the 21st of December, 1846.

To the reading of this paper defendants objected upon various grounds, and among others, they urged the objection that the paper had not been filed three days before the trial, and notice given to plaintiffs' counsel, but was offered as evidence under the agreement between counsel, and that the instrument was met by a plea of non est factum.

This objection was properly overruled, we think, by the court. By their agreement with defendants' counsel, plaintiffs had relieved defendants from the burthen of proving the instrument. It was a recorded instrument, and even if the certificate of the officer before whom it purports to have been proved be not in accordance with the statute then in force, such certificates are now good by virtue of subsequent healing acts. The paper was properly admitted over this objection. The burthen was upon the plaintiffs to show the forgery, and they could not shift that burthen to defendants by a plea of non est factum, supported by affidavit. The other objection to the introduction of this evidence urged by plaintiffs we deem it not necessary to consider, as in view of all the facts we have determined to affirm the judgment.

In addition to this instrument, defendants offer in evidence a decree or judgment of the court of the alcalde of San Felipe de Austin, rendered on the 17th of February, 1834, adjudicating one-half of a league of the lands granted to William Gates to his son Amos Gates, and divesting the title of the other heirs of William Gates to said one-half league. To this decree the plaintiffs objected, because it showed upon its face that it was void; and this objection we also hold was properly overruled.

The defendants proved by several witnesses, that Amos Gates was in possession of the lands for several years before the death of plaintiffs' father; that Charles Gates lived upon the lands of his father's estate until he left the county; that he left the lands in the year 1832; that he died in about 1840; and that his widow and children returned to the county between his death and 1846, and lived upon the lands granted to his father, and in a house thereon owned by Amos Gates, and near to his residence, and were supported by him until they left the county between the years 1850 and 1853.

The evidence also showed that Amos Gates purchased the interest of his brother, Samuel Gates, in his father's estate, and also the interest of his two sisters, Mrs. Kuykendall and Mrs. Cooper; that he was the administrator of his father's estate, and that he was duly discharged from his trust by an order of court in May, 1830; that he claimed and exercised rights of ownership over both the leagues of land granted to his father until he sold and conveyed the lower league in 1857. There was also evidence that Charles Gates was heard to say repeatedly that he had sold all of his interest in his father's estate to his brother Amos.

The plaintiffs put in evidence a power of attorney from Charles Gates to Samuel May Williams, dated in Nacogdoches, November, 1833, authorizing and empowering Williams to convey title to his entire interest in his father's estate to his brother Amos Gates. There was no evidence of any assertion or claim of title to the lands in controversy by plaintiffs until the institution of this suit. These facts, considered in connection with the further fact that in the lifetime of Charles Gates a parol sale of land was valid, the court holds to be sufficient to establish a sale by Charles Gates of his interest in his father's estate to his brother, Amos Gates, and that the judgment of the court should be affirmed, and it is so ordered.

*Affirmed.*

Delivered February 9, 1893.

Judge GARRETT did not sit in this case.